**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

TAMMY TERPENING,

                Plaintiff,
   v.

ANTHONY MCGINTY, in his official and individual capacities,

No. 1:21-CV-1215 (GTS/CFH)

                Defendant.
_____

**APPEARANCES:**

Tammy Terpening
17 Blair Road, Apt. 6
Kerhonkson, New York 12446
Plaintiff pro se

**REPORT-RECOMMENDATION AND ORDER**

**I. In Forma Pauperis**

Plaintiff pro se Tammy Terpening ("plaintiff") purported to commence this action on November 9, 2021, by filing a complaint. See Dkt. No. 1 ("Compl."). In lieu of paying this Court's filing fee, she submitted a motion to proceed in forma pauperis ("IFP"). See Dkt. No. 2. The undersigned has reviewed plaintiff's IFP motion and determines that she financially qualifies to proceed IFP for the purpose of filing.[1]

**II. Initial Review**

---

[1] Plaintiff is advised that although she has been granted IFP status, she is still required to pay any costs and fees that she may incur in this matter, including, but not limited to, any copying fees or witness fees.

**A. Legal Standard**

Section 1915[2] of Title 28 of the United States Code directs that, when a plaintiff seeks to proceed IFP, "the court shall dismiss the case at any time if the court determines that . . . the action or appeal (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). It is a court's responsibility to determine that a plaintiff may properly maintain his complaint before permitting him to proceed with his action.

Where, as here, the plaintiff proceeds pro se, "the court must construe his [or her] submissions liberally and interpret them to raise the strongest arguments that they suggest." Kirkland v. Cablevision Sys., 760 F.3d 223, 224 (2d Cir. 2014) (per curiam) (citation and internal quotation marks omitted). This does not mean the Court is required to accept unsupported allegations that are devoid of sufficient facts or claims. Although detailed allegations are not required at the pleading stage, the complaint must still include enough facts to provide the defendants with notice of the claims against them and the grounds on which these claims are based. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Bell Atlantic v. Twombly, 550 U.S. 544, 555-56 (2007). Ultimately, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference

---

[2] The language of 1915 suggests an intent to limit availability of IFP status to prison inmates. See 28 U.S.C. § 1915(a)(1) (authorizing the commencement of an action without prepayment of fees "by a person who submits an affidavit that includes a statement of all assets such prisoner possesses"). The courts have construed that section, however, as making IFP status available to any litigant who can meet the governing financial criteria. See, e.g., Fridman v. City of N.Y., 195 F. Supp. 2d 534, 536 n.1 (S.D.N.Y. 2002).

that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citation omitted).

Pro se litigants are "not exempt . . . from compliance with relevant rules of procedural and substantive law[.]" Traguth v. Zuck, 710 F.2d 90, 95 (2d Cir. 1983) (citation omitted).  Pleading guidelines are set forth in the Federal Rules of Civil Procedure ("Fed. R. Civ. P.").  Specifically, Rule 8 provides that a pleading which sets forth a claim for relief shall contain, among other things, "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2).  "The purpose . . . is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of res judicata is applicable." Flores v. Graphtex, 189 F.R.D. 54, 55 (N.D.N.Y. 1999) (internal quotation marks and citations omitted).  Rule 8 also requires the pleading to include "a short and plain statement of the grounds for the court's jurisdiction" and "a demand for the relief sought . . . ." FED. R. CIV. P. 8(a)(1), (3). Although "[n]o technical form is required," the Federal Rules make clear that each allegation contained in the pleading "must be simple, concise, and direct." Id. at 8(d)(1).

Further, Rule 10 provides in pertinent part that:

> [a] party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances.  A later pleading may refer by number to a paragraph in an earlier pleading.  If doing so would promote clarity, each claim founded on a separate transaction or occurrence – and each defense other than a denial – must be stated in a separate count or defense.

FED. R. CIV. P. 10(b).  This serves the purpose of "provid[ing] an easy mode of identification for referring to a particular paragraph in a prior pleading[.]" Flores, 189

3

F.R.D. at 55 (internal quotation marks and citations omitted).  A complaint that fails to comply with the pleading requirements "presents far too [] heavy [a] burden in terms of defendants' duty to shape a comprehensive defense and provides no meaningful basis for the Court to assess the sufficiency of their claims." Gonzales v. Wing, 167 F.R.D. 352, 355 (N.D.N.Y. 1996).  The Second Circuit has held that "[w]hen a complaint does not comply with the requirement that it be short and plain, the court has the power, on its own initiative . . . to dismiss the complaint." Salahuddin v. Cuomo, 861 F.2d 40, 42 (2d Cir. 1988) (citation omitted).  However, "[d]ismissal . . . is usually reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." Id. (citation omitted).  If dismissal is warranted and the plaintiff is pro se, the court generally affords the plaintiff leave to amend the complaint. See Simmons v. Abruzzo, 49 F.3d 83, 86-87 (2d Cir. 1995).

### B. Plaintiff's Complaint[3]

Plaintiff asserts that "Anthony McGinty of Ulster County Family Court violated" her Fourteenth Amendment Equal Protection and Due Process rights, the Americans with Disabilities Act ("ADA"), and Title VII.  Compl. at 6; 2, 5.  Plaintiff asserts that in September 12 and December 12, 2019, custody orders, Judge McGinty granted her children's father visitation and custody rights despite the father's "extensive criminal background to include drug & alcohol . . . while under an investigation of child sex abuse." Id. at 2-3.  Plaintiff contends that the September 12, 2019, visitation order

---

[3] When listing her claims, plaintiff cites to various paragraph numbers, however, only some paragraphs of the complaint have numbers, and they seem to jump from 24 to 221. See Compl. at 6-7, 13.  As it is unclear how plaintiff has numbered her paragraphs, the court will reference the complaint by page number.

4

"caused loss of income and acute stress which resulted in a decline in [her] good health causing high blood pressure, sleep disturbance attributing to two strokes." Id. at 2. As a result, plaintiff was hospitalized and requested that McGinty "adjourn [a] hearing[.]" Id. at 4. Plaintiff asserts that Judge McGinty denied her "reasonable accommodation and modification rights[.]" Id. at 3, 13-14. Judge McGinty also allegedly denied plaintiff's request for Judge McGinty to recuse himself. See id. at 6. More specifically, Judge McGinty "deprived" plaintiff of "a fair trial to prove [her] custody rights/[s]witching custody without a fair hearing and without a significant change in circumstance." Id. Rather, while plaintiff "was hospitalized," a hearing was held between her sister, whom she had left her children with, and the children's father whereby Judge McGinty granted the father temporary custody. Id. at 3. Judge McGinty gave the father temporary custody "despite [plaintiff's] attorney [being] present and requesting an adjournment[.]" Id. Plaintiff then left "the hospital against medical advice to protect [her] children[.]" Id. Plaintiff also contends that Judge McGinty's "December 12, 2019[,] order had the potential to have resulted in further emotional, physical and sexual abuse to [her] daughters." Id. "On or about January 2020 both parents vacated the order that McGinty made on December 12, 2019[,] due to the fact that it was against both [of their] wishes and the children remained home with [plaintiff]." Id. at 4.

Plaintiff generally asserts that Judge "McGinty is well known to . . . be against mothers who suffer from abusers" and that his conduct was "gender biased, unconstitutional [and had a] disparate impact on women and children[.]" Compl. at 3-4. "Plaintiff [] seeks declaratory relief under Title VII declaring the [d]efendants' non-evidence, gender biased policies, practices, procedures and standards for deciding

5

legally entitled economic, property ownership and custody rights in Custody Orders in contested cases family court Judge decided and enforce[d] are unconstitutional." Id. at 5. Plaintiff also seeks "compensatory damages, punitive damages and attorney's fees [] [d]ue to inflicting willful, unlawful financial, psychological, mental and emotional injury[.]" Id. at 5, 13-15. Finally, plaintiff seeks injunctive relief "barring [Judge McGinty] from continuing [his] illegal acts[.]" Id. at 15.

### C. Analysis[4]

Plaintiff asserts violations of her Fourteenth Amendment rights to Due Process and Equal Protection pursuant to 42 U.S.C. § 1983, the ADA, and Title VII. Plaintiff also briefly notes in one sentence of her fifteen-page complaint that she is seeking to bring "a claim, seemingly pursuant to 42 U.S.C. § 1983, based on a violation of the Thirteenth Amendment[.]" Compl. at 7. Plaintiff does not assert any facts that plausibly suggest illegal confinement in violation of the Thirteenth Amendment and, regardless, "[a] habeas corpus petition, not a § 1983 suit, is the appropriate vehicle by which to seek relief from illegal confinement." Godley v. Onondaga Cnty., No. 6:16-CV-01419 (DNH/TWD), 2017 WL 2805162, at *6, n.4 (N.D.N.Y. Jan. 6, 2017), report and recommendation adopted, 2017 WL 2804944 (N.D.N.Y. June 28, 2017) (citations omitted); see also Moore-Beidl v. Beaudoin, 553 F. Supp. 404, 406 (N.D.N.Y. 1981) (dismissing habeas petition where a mother alleged "no restraints upon her person other than the fact that she is forc[ibly] being prevented from being together with her youngest son.").

---

[4] All unpublished opinions cited in this Report-Recommendation and Order, unless otherwise noted, have been provided to plaintiff.

**1. Section 1983 Claims**

"[O]fficials acting in a judicial capacity are entitled to absolute immunity against § 1983 actions . . . ." Montero v. Travis, 171 F.3d 757, 760 (2d Cir. 1999) (per curiam). "Judicial immunity is immunity from suit, not just immunity from the assessment of damages." Montes v. O'Shea, No. 1:21-CV-303 (DNH/ATB), 2021 WL 1759853, at *4 (N.D.N.Y. Apr. 6, 2021), report and recommendation adopted, 2021 WL 1758858 (N.D.N.Y. May 4, 2021) (citing Mitchell v. Forsyth, 472 U.S. 511, 526 (1985)). "The only two circumstances in which judicial immunity does not apply is when [a judge] takes action 'outside' his or her judicial capacity and when the judge takes action that, although judicial in nature, is taken 'in absence of jurisdiction.'" Id. (quoting Mireles, 502 U.S. at 11-12). "But 'the scope of [a] judge's jurisdiction must be construed broadly where the issue is the immunity of the judge.'" Amato v. McGinty, No. 1:21-CV-00860 (GLS/TWD), 2022 WL 226798, at *7 (N.D.N.Y. Jan. 26, 2022) (quoting 42 U.S.C. § 1983) (quoting Stump v. Sparkman, 435 U.S. 349, 356 (1978)). "Judicial immunity applies even when the judge is accused of acting maliciously or corruptly." Montes, 2021 WL 1759853, at *4 (citing Imbler v. Pachtman, 424 U.S. 409, 419 n.12 (1976)) (additional citation omitted).

"While judicial immunity shields judges from suit to the extent they are sued in their individual capacities, the Eleventh Amendment shields judges from suit to the extent that they are sued in their official capacities." Washington v. Ciccone, No. 3:21-CV-0564 (MAD/ML), 2021 WL 2935950, at *4 (N.D.N.Y. July 13, 2021), report and recommendation adopted, 2021 WL 4859663 (N.D.N.Y. Oct. 19, 2021) (citing inter alia Libertarian Party of Erie Cnty. v. Cuomo, 970 F.3d 106, 122-23 (2d Cir. 2020) (affirming

dismissal of individual capacity claims against state administrative judges based on judicial immunity and official capacity claims based on the Eleventh Amendment)). This is because "'[c]laims against a government employee in his official capacity are treated as a claim against the municipality,' and, thus, cannot stand under the Eleventh Amendment." Jackson v. Gunsalus, No. 5:16-CV-00647 (GLS/TWD), 2016 WL 4004612, at *2 (N.D.N.Y. June 24, 2016), report and recommendation adopted, 2016 WL 3983635 (N.D.N.Y. July 25, 2016) (quoting Hines v. City of Albany, 542 F. Supp. 2d 218, 227 (N.D.N.Y. 2008)). "In addition, Section 1983 provides that 'in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.'" Amato, 2022 WL 226798, at *7 (quoting 42 U.S.C. § 1983).

The acts alleged in plaintiff's complaint "arise out of family court proceedings before Judge McGinty, the functions complained of were ones normally performed by a judge, and [p]laintiff was a party who dealt with Judge McGinty in his judicial capacity." Amato, 2022 WL 226798, at *8. Plaintiff does not allege that Judge McGinty acted outside of his judicial capacity, and he does not lose his immunity because he is accused of acting in "bad faith or [with] malice[.]" Bliven v. Hunt, 579 F.3d 204, 209 (2d Cir. 2009). Accordingly, Judge McGinty is entitled to judicial immunity to the extent plaintiff seeks to bring this action against him in his individual capacity. Further, Eleventh Amendment immunity bars plaintiff's suit against Judge McGinty in his official capacity because "a suit against a state official in his official capacity is, in effect, a suit against the state itself, which is barred." Walker v. Fam. Ct. Judge Catherine Cholakis,

No. 1:19-CV-1288 (LEK/CFH), 2020 WL 3503158, at *7 (N.D.N.Y. June 29, 2020) (citations omitted).

Finally, plaintiff is not entitled to injunctive or declaratory relief under Section 1983.  "[T]he Supreme Court established a[n] [] exception [to states' Eleventh Amendment immunity] in *Ex parte Young*, 209 U.S. 123 (1908), allowing prospective injunctive relief . . . against individuals being sued in their official capacities in order to correct an ongoing violation of federal law."  Mann v. N. Y. State Ct. of Appeals, No. 1:21-CV-49 (MAD/CFH), 2021 WL 5040236, at *4 (N.D.N.Y. Oct. 29, 2021) (citations and quotation marks omitted).  However, plaintiff has not asserted an ongoing violation of federal law but seeks redress for Judge McGinty's past 2019 custody determinations. See generally Compl.  As such, "[p]laintiff is not entitled to injunctive relief because she allege[d] neither the violation of a declaratory decree, nor the unavailability of declaratory relief. . . .  Nor is [p]laintiff entitled to declaratory relief because she alleges only past conduct and does not seek to prevent an ongoing or future violation of federal law." Amato, 2022 WL 226798, at *8 (quotation marks omitted) (quoting Montero, 171 F.3d at 761; Shtrauch v. Dowd, 651 F. App'x 72, 74 (2d Cir. 2016) (summary order)); see 42 U.S.C. § 1983 ("[I]n any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.").  Thus, the Court recommends dismissing plaintiff's Section 1983 claims against Judge McGinty in both his individual and official capacities as they are barred on immunity grounds. See, e.g., Bracci v. Becker, No. 1:11-CV-1473 (MAD/RFT), 2013 WL 123810, at *6 (N.D.N.Y. Jan. 9, 2013) (dismissing claim against an administrative judge where the

plaintiffs "could have sought declaratory relief in state court, but either failed to seek such relief or their request for relief was denied."), aff'd 568 F. App'x 13 (2d Cir. 2014) (summary order).

### 2. ADA Claim

"Title II of the ADA proscribes discrimination against the disabled in access to public services." Harris v. Mills, 572 F.3d 66, 73 (2d Cir. 2009) (citation and internal quotation marks omitted). As an initial matter, "judicial immunity [] extend[s] to claims under the ADA . . . related to the court's control over ongoing proceedings . . . ." Brooks v. Onondaga Cnty. Dep't of Child. & Fam. Servs., No. 5:17-CV-1186 (GLS/TWD), 2018 WL 2108282, at *4-5 (N.D.N.Y. Apr. 9, 2018), report and recommendation adopted, 2018 WL 2108187 (N.D.N.Y. May 7, 2018) (collecting cases). As explained, plaintiff seeks to bring this action against Judge McGinty for his actions taken while presiding over her family court proceedings and he is, therefore, immune from suit in his individual capacity under the ADA. See generally Compl.; see Boyne v. Meyer, No. 8:18-CV-0536 (GTS/DJS), 2018 WL 3862685, at *9 (N.D.N.Y. Aug. 14, 2018) ("Just because [the p]laintiff alleges that these actions were improper or violated his rights under the ADA does not change the fact that actions such as managing discovery, denying motions and requests, writing decisions, holding hearings, and making legal findings are all squarely judicial in nature"; thus, the plaintiff claims were barred by judicial immunity).

To be sure, "individuals cannot be held liable under the ADA." Netti v. Ayers, 17-CV-0976 (GTS/ATB), 2017 WL 7542494, at *18 (N.D.N.Y. Oct. 5, 2017) (recommending dismissal with prejudice of the plaintiff's "claim for damages under the ADA" "to the extent" she attempted to name individual defendants) (collecting cases). Rather, ADA

Title II claims can only be brought against a "[p]ublic entity[,]" defined as, "any State or local government; [] any department, agency, special purpose district, or other instrumentality of a State or States or local government . . . ." 42 U.S.C. § 12131. Accordingly, to the extent plaintiff attempts to bring his action against Judge McGinty in his individual capacity, the claim must be dismissed. See Doherty v. Bice, No. 18-CV-10898 (NSR), 2020 WL 5548790, at *10 (S.D.N.Y. Sept. 16, 2020) (quoting Garcia v. S.U.N.Y. Health Scis. Ctr. of Brooklyn, 280 F.3d 98, 107 (2d Cir. 2001) (dismissing with prejudice the claims against the defendants in their individual capacities pursuant to Title II of the ADA because that statute does not "provid[e] for individual capacity suits against state officials.")).

To the extent plaintiff seeks to sue Judge McGinty in his official capacity, such a claim is ordinarily barred by the Eleventh Amendment. See Parent v. New York, 786 F. Supp. 2d 516, 530 (N.D.N.Y. 2011) ("The Eleventh Amendment also bars claims for money damages against state officials acting in their official capacities.") aff'd, 485 F. App'x 500 (2d Cir. 2012) (summary order). "Eleventh Amendment immunity is lost only if Congress unequivocally abrogates states' immunity or a state expressly consents to suit." Id. (citation omitted). The Supreme Court of the United States has explained that Congress, in enacting the ADA, "invoke[d] the sweep of congressional authority, including the power to enforce the [F]ourteenth [A]mendment," and abrogated States' Eleventh Amendment immunity. United States v. Georgia, 546 U.S. 151, 154 (2006) (quoting 42 U.S.C. § 12101(b)(4)). The Court determined that "insofar as Title II creates a private cause of action for damages against the States for conduct that *actually* violates the Fourteenth Amendment, Title II validly abrogates state sovereign immunity."

11

Id. at 159. However, "if a plaintiff cannot state a Title II claim, the court's sovereign immunity inquiry is at an end." Mary Jo C. v. N.Y. State & Local Ret. Sys., 707 F.3d 144, 152 (2d Cir. 2013).

To establish a violation of Title II of the ADA, a plaintiff "must show that 1) he [or she] is a qualified individual with a disability; 2) [the defendant] is an entity subject to the acts;[5] and 3) he [or she] was denied the opportunity to participate in or benefit from [the defendant's] services, programs, or activities [or that the defendant] otherwise discriminated against him [or her] by reason of his disability." Wright v. N.Y. State Dep't of Corr., 831 F.3d 64, 72 (2d Cir. 2016). "[T]o establish the existence of a disability, a plaintiff must demonstrate that he or she suffers from a physical or mental impairment that "substantially limits one or more major life activities. . . .'" Wega v. Ctr. for Disability Rts., No. 06-CV-6375, 2009 WL 3199684, at *7 (W.D.N.Y. Sept. 30, 2009) (quoting 42 U.S.C. § 12102(2)(A)), aff'd 395 F. App'x 782 (2d Cir. 2010) (summary order). "[M]ajor life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2)(A).

---

[5] In a similar case brought against Judge McGinty and raising, in part, an ADA claim, Magistrate Judge Dancks noted that "[i]t is questionable whether defendants, even when sued in their official capacities, are public entities." Amato, 2022 WL 226798, at *9, n.10 (additional citation omitted) (citing Santiago v. Garcia, 70 F. Supp. 2d 84, 89 (D. P.R. 1999) (holding state court judge sued in official capacity was not "public entity" under Title II); but see Shollenberger v. N.Y. State Unified Court Sys., 18-CV-9736, 2019 WL 2717211, at *5 (S.D.N.Y. June 28, 2019) (allowing ADA claims seeking prospective injunctive relief to proceed against Chief Judge of the State of New York and Chief Administrator of the New York State Unified Court System because "a plaintiff need only allege the defendant[s] ha[ve] responsibility for the alleged conduct and the ability to redress the alleged violations")). The Court makes no determination on this issue at this juncture as plaintiff's ADA claim cannot proceed where she has failed to allege a qualifying disability.

Plaintiff alleges that Judge McGinty "denied [p]laintiff ADA Accommodations requested to adjourn the hearing while having a stroke and being hospitalized." Compl. at 4. She also states that "[a]s a result of [Judge McGinty's] discriminatory practices, . . . she developed an additional qualified ADA disability of Post-Traumatic stress disorder[.]" Id. at 14. Plaintiff has not alleged any facts that indicate that she suffered from a disability which limited a major life activity. See generally Compl.; cf. Mitchell v. Girl Scouts of the U.S.A., No. 98-CV-3730 (GBD), 2003 WL 22705121, at *7 (S.D.N.Y. Nov. 17, 2003) (explaining that the "plaintiff's general assertion that she cannot perform any of her normal activities to her pre-stroke skill level, and her resulting weariness from the performance of those activities, are insufficient to render her disabled for ADA purposes."). Although plaintiff asserts she had a stroke and was in the hospital, she does not allege that either circumstance impacted her ability to eat, sleep, walk, care for herself, think, work, etc. See 42 U.S.C. § 12102(2)(A); see also Horwitz v. L & J.G. Stickley, Inc., 122 F. Supp. 2d 350, 357 (N.D.N.Y. 2000) ("[T]here is little doubt that [the p]laintiff's [two-week] hospitalization limited her ability to work for that period of time during which she was in the hospital. However, absent any evidence of substantial residual limitations impacting a major life activity, a brief hospitalization . . ., even considered together with the six weeks of psychiatric center care, is insufficient to constitute a record of a disability[.]"), aff'd 20 F. App'x 76 (2d Cir. 2001) (summary order). Rather, plaintiff states that she left the hospital of her own accord, albeit "against medical advice[.]" Compl. at 3. This does not sufficiently allege a qualifying disability. See Louis v. N.Y.C. Hous. Auth., 152 F. Supp. 3d 143, 150 (S.D.N.Y. 2016) (dismissing claims where "although the Amended Complaint alleges that [the plaintiff]

13

suffers from mental illness and seizures and has at some point suffered a stroke, it does not allege that these conditions affected either her ability to engage in any life activities, major or minor, or her major bodily functions during the relevant time period.").

As to what accommodations she was denied, plaintiff alleges that Judge McGinty proceeded with a custody hearing "despite [her] attorney formally stating on the record that [she] was in the hospital having a stroke[.]" Compl. at 6. Therefore, she contends that was "deprived [] of equal access to a fair trial to prove [her] custody rights/[s]witching custody without a fair hearing and without a significant change in circumstance." Id.; see Fowler v. Dep't of Correction, No. 3:18-CV-01635 (JAM), 2019 WL 2176304, at *3 (D. Conn. May 20, 2019) ("Title II of the ADA validly abrogates sovereign immunity and permits a private cause of action for damages against a state or state entity, at least as to conduct that rises to the level of also violating the Constitution.").[6] To the extent plaintiff asserts that Judge McGinty caused her PTSD,

---

[6] The Court makes no determination as to whether Judge McGinty's conduct "*actually* violates the Fourteenth Amendment" such that his sovereign immunity would be abrogated. Georgia, 546 U.S. at 159. However, should plaintiff amend her complaint and sufficiently allege a violation of Title II, it is worth noting that whether Judge McGinty's Eleventh Amendment immunity has been abrogated is a more complicated question than stated in this Report & Recommendation because of "a growing fracture among the district courts in this Circuit in their approach to determining whether Congress validly abrogated state sovereign immunity under Title II of the ADA." Dean v. Univ. at Buffalo Sch. of Med. & Biomedical Scis., 804 F.3d 178, 193 (2d Cir. 2015) (collecting cases applying each of the two approaches). One approach states that "a private suit brought pursuant to Title II of the ADA for *money damages* can only be maintained against a state if the plaintiff can establish that the Title II violation was motivated by either discriminatory animus or ill will due to disability." Henrietta D. v. Bloomberg, 331 F.3d 261, 288 (2d Cir. 2003) (citing Garcia v. S.U.N.Y. Health Sciences Center of Brooklyn, 280 F.3d 98, 111-12 (2d Cir. 2001)). The other approach applies a three-part test asking (1) "which aspects of the State's alleged conduct violated Title II; (2) "to what extent such misconduct also violated the Fourteenth Amendment"; and (3) if the State's "misconduct violated Title II but did not violate the Fourteenth Amendment, . . . whether Congress's purported abrogation of sovereign immunity as to that class of conduct is nevertheless valid." United States v. Georgia, 546 U.S. 151, 159 (2006); see Lenti v. Connecticut, No. 3:20-CV-127 (SRU), 2020 WL 4275600, at *7-8 (D. Conn. July 24, 2020). As plaintiff has not sufficiently alleged a qualifying disability, the Court need not determine whether Judge McGinty's conduct amounts to a Fourteenth Amendment Violation, which approach applies, and whether plaintiff's claim for damages against Judge McGinty can proceed. See Matagrano v. New York State Dep't of Corr. & Cmty. Supervision, No. 9:19-CV-00763 (BKS/DJS), 2020 WL 7338586, at *15 (N.D.N.Y. Dec. 14, 2020) (thoroughly explaining Eleventh Amendment abrogation under Title II and the split among courts

14

there are no facts alleged in the complaint "to suggest that [Judge McGinty] refused to allow [p]laintiff to participate in any program or activity *because of*" her PTSD. Franks v. Eckert, No. 18-CV-589 (EAW), 2020 WL 4194137, at *4 (W.D.N.Y. July 21, 2020). Although plaintiff seems to sufficiently allege that she was denied participation in custody proceedings because of her hospitalization, there are insufficient facts to indicate that her stroke, hospitalization, or PTSD substantially limited a major life activity such that she does not meet the initial factor necessary to bring a claim under the ADA of having a qualifying disability. Billings v. N.Y. State Dep't of Corr. & Cmty. Supervision, No. 19-CV-11796 (NSR), 2021 WL 4150925, at *9 (S.D.N.Y. Sept. 10, 2021) (dismissing a claim without prejudice where the "[p]laintiff fails to include any facts in the Amended Complaint that show how her diabetes affects her life or her employment, or otherwise limits her enjoyment of any major life activities."). As there are no allegations indicating that plaintiff's stroke, hospitalization, or PTSD substantially limited a major life activity and, in turn, that Judge McGinty denied plaintiff the right to participate in any proceedings because of "disability," plaintiff's ADA claim should be dismissed.

### 3. Title VII Claim

Under Title VII "[i]t shall be an unlawful employment practice for an employer . . . to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national

---

regarding the appropriate approach to apply after the plaintiff's ADA claims survived sua sponte review); see Mary Jo C., 707 F.3d at 152 (citing Buchanan v. Maine, 469 F.3d 158, 172-73 (1st Cir.2006) ("If the State's conduct does not violate Title II, the court does not proceed to the next step in the [*United States v. Georgia*] analysis. The claim ends.")).

origin[.]" 42 U.S.C.A. § 2000e-2(a)(2); see Littlejohn v. City of N.Y., 795 F.3d 297, 307 (2d Cir. 2015) ("Ultimately, the plaintiff will be required to prove that the employer-defendant acted with discriminatory motivation."). A plaintiff's "Title VII claims against [] individual [d]efendants must be dismissed with prejudice. . . . because 'individuals are not subject to liability under Title VII." Golden v. Syracuse Reg'l Airport Auth., No. 5:20-CV-1566 (MAD/TWD), 2021 WL 485731, at *1 (N.D.N.Y. Feb. 10, 2021) (quoting Patterson v. Cnty. of Oneida, N.Y., 375 F.3d 206, 221 (2d Cir. 2004)).

Plaintiff "seeks declaratory relief under Title VII[,]" declaring that Judge McGinty's conduct was "gender biased" and "unconstitutional." Compl. at 5. "Since Title VII claims are to be raised against a plaintiff's employer, there is no proper Title VII defendant in this case." Amato, 2022 WL 226798, at *8. Additionally, as there is no individual liability under Title VII, the Court recommends dismissal of plaintiff's Title VII claims.[7]

---

[7] Plaintiff's claims also appear to implicate the Younger abstention doctrine. See Amato, 2022 WL 226798, at *11 (citing Younger v. Harris, 401 U.S. 37 (1971)). "[D]istrict courts should abstain from exercising jurisdiction only in three 'exceptional circumstances' involving (1) 'ongoing state criminal prosecutions,' (2) 'certain civil enforcement proceedings,' and (3) 'civil proceedings involving certain orders uniquely in furtherance of the state courts' ability to perform their judicial functions.'" Falco v. Justs. of the Matrimonial Parts of Supreme Ct. of Suffolk Cnty., 805 F.3d 425, 427 (2d Cir. 2015) (quoting Sprint Commc'ns, Inc. v. Jacobs, 571 U.S. 69, 78 (2013)). "[T]here can be no doubt that a custody dispute . . . raises important state interests." Reinhardt v. Com. of Mass. Dep't of Social Servs., 715 F.Supp. 1253, 1256 (S.D.N.Y.1989). Therefore, where "there is an ongoing child custody dispute[]" and the "plaintiff is able to raise any potential constitutional claims in the state court system"[,]" the claims are barred by Younger. Graham v. N.Y. Ctr. for Interpersonal Dev., No. 15-CV-00459 (PKC), 2015 WL 1120120, at *3 (E.D.N.Y. Mar. 12, 2015). Plaintiff alleges that "[f]rom 2016 to present[,]" Judge McGinty has violated her rights through his Custody and Visitation Orders. Compl. at 4. Therefore, to the extent, there are ongoing Family Court proceedings, the Court should abstain from interfering. Further, plaintiff's claims are likely barred by the Rooker-Feldman doctrine. See Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923); District of Columbia Court of Appeals v. Feldman, 460 U.S. 462 (1983). Under the Rooker-Feldman doctrine, a district court lacks jurisdiction to consider a plaintiff's claim when "[1] the plaintiff lost in state court[;] [2] the plaintiff . . . complain[s] of injuries caused by a state-court judgment, [3] the plaintiff . . . invite[s] district court review and rejection of that judgment[;] [and 4] the state-court judgment [was] rendered before the district court proceeding commenced." McKithen v. Brown, 481 F.3d 89, 97 (2d Cir. 2007) (citation and additional alterations omitted). Although plaintiff "vacated" Judge McGinty's December 12, 2019, custody order, to the extent she asks this Court to declare other past orders that denied her custody or visitation unconstitutional or invalid, such claims are likely barred. Compl. at 4-5.

16

### 4. Opportunity to Amend

Generally, "[a] *pro se* complaint should not be dismissed without the Court granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." Nielsen v. Rabin, 746 F.3d 58, 62 (2d Cir. 2014) (citation omitted). "However, if the problems with a complaint are 'substantive' rather than the result of an 'inadequately or inartfully pleaded' complaint, an opportunity to re-plead would be 'futile' and 'should be denied.'" Edwards v. Penix, 388 F. Supp. 3d 135, 144-45 (N.D.N.Y. 2019) (quoting Cuoco v. Moritsugu, 222 F.3d 99, 112 (2d Cir. 2000)). It is recommended that plaintiff's Section 1983 and Title VII claims be dismissed with prejudice as immunity and a lack of a cognizable cause of action are incurable defects. However, it is possible that with better pleading, plaintiff's ADA claim against Judge McGinty in his official capacity could survive sua sponte dismissal of the initial review of her complaint. See Harris, 572 F.3d at 72 ("Title II . . . suits for prospective injunctive relief may, under the doctrine established by *Ex parte Young*, 209 U.S. 123 (1908), proceed against individual officers in their official capacity[.]"); Orr v. McGinty, No. 1:17-CV-1280 (GLS/TWD), Dkt. No. 47, pp. 8-11 (dismissing the ADA claims without prejudice where the plaintiffs "request[ed] [] an injunction 'barring [d]efendants from continuing their illegal acts[.]'").

### III. Conclusion

**WHEREFORE**, for the reasons set forth herein, it is hereby

17

**ORDERED**, that plaintiff's application to proceed in forma pauperis (Dkt. No. 2) is **GRANTED** for purposes of filing only; and it is further

**RECOMMENDED**, that plaintiff's 42 U.S.C. § 1983 and Title VII claims against defendant in his official and individual capacities, and plaintiff's ADA claim against defendant in his individual capacity (Dkt. No. 1) be **DISMISSED WITH PREJUDICE WITHOUT LEAVE TO AMEND**; and it is further

**RECOMMENDED**, that plaintiff's ADA claim against defendant in his official capacity (Dkt. No. 1) be **DISMISSED WITHOUT PREJUDICE WITH LEAVE TO AMEND**[8]; and it is further

**RECOMMENDED**, that should the District Judge adopt this Report-Recommendation and Order, plaintiff be given thirty (30) days from the date of the Order adopting this Report-Recommendation and Order to file an amended complaint, and if plaintiff does not file an amended complaint, (1) it will be deemed as an abandonment of any claims for which leave to replead has been granted and will result in judgment being entered against plaintiff on these claims without further order by the Court, and (2) the matter be returned to the Magistrate Judge for service of the original complaint for any claims that were permitted to proceed in the original complaint, with all other claims deemed stricken.

**IT IS SO ORDERED**.

---

[8] Plaintiff is advised that an amended complaint is intended to completely replace the prior complaint in the action, and thus it "renders [any prior complaint] of no legal effect." International Controls Corp. v. Vesco, 556 F.2d 665, 668 (2d Cir. 1977), cert. denied sub nom., Vesco & Co., Inc. v. International Controls Corp., 434 U.S. 1014(1978); see also Shields v. Citytrust Bancorp, Inc., 25 F.3d 1124, 1128 (2d Cir. 1994). Therefore, any amended complaint must include all of the allegations against the defendant against whom the case is going forward so that the amended complaint may stand alone as the sole complaint in this action.

Pursuant to 28 U.S.C. § 636(b)(1), plaintiff has **FOURTEEN (14)** days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**. Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993) (citing Small v. Sec'y of Health and Human Servs., 892 F.2d 15 (2d Cir. 1989)); see also 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a).[9]

Dated: April 28, 2022
Albany, New York

*Christian F. Hummel*
Christian F. Hummel
U.S. Magistrate Judge

---

[9] If you are proceeding pro se and are served with this Report-Recommendation & Order by mail, three (3) additional days will be added to the fourteen (14) day period, meaning that you have seventeen (17) days from the date the Report-Recommendation & Order was mailed to you to serve and file objections. FED R. CIV. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Id. § 6(a)(1)(c).