**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

TAMMY TERPENING,

                          Plaintiff,

      v.

ANTHONY MCGINTY, in his judicial
and individual capacities,

                     Defendant.

No. 1:21-CV-1215
(GTS/CFH)

**APPEARANCES:**

Tammy Terpening
17 Blair Road, Apt. 6
Kerhonkson, New York 12446
Plaintiff pro se

## REPORT-RECOMMENDATION AND ORDER

### I. Procedural Background

Plaintiff pro se Tammy Terpening ("plaintiff") commenced this action on November 9, 2021, with the filing a complaint and an application to proceed in forma pauperis ("IFP"). See Dkt. No. 1 ("Compl."); Dkt. No. 2. In a Report-Recommendation and Order dated April 28, 2022, the undersigned: (1) granted plaintiff's IFP application; (2) recommended that plaintiff's 42 U.S.C. § 1983 and Title VII claims, and Americans with Disabilities Act ("ADA") claim against defendant Judge Anthony McGinty ("defendant") in his individual capacity be dismissed with prejudice and without leave to amend; and (3) recommended that plaintiff's ADA claim against defendant in his official capacity be dismissed without prejudice and with leave to amend. See Dkt. No. 6.

Plaintiff was informed that she had fourteen days to file objections to the Report-Recommendation and Order.  See id. at 19.  Plaintiff did not file any objections and on June 13, 2022, Judge Suddaby adopted the Report-Recommendation and Order in its entirety.  See Dkt. No. 8.  Presently before the Court is plaintiff's amended complaint for review pursuant to 28 U.S.C. § 1915.  See Dkt. No. 9 ("Am. Compl.").

## II. Initial Review of Amended Complaint

### A. Legal Standard

Section 1915[1] of Title 28 of the United States Code directs that, when a plaintiff seeks to proceed IFP, "the court shall dismiss the case at any time if the court determines that . . . the action or appeal (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief."  28 U.S.C. § 1915(e)(2)(B).  It is a court's responsibility to determine that a plaintiff may properly maintain his or her complaint before permitting him or her to proceed with the action.

Where, as here, the "plaintiff proceeds pro se, the court must construe his [or her] submissions liberally and interpret them to raise the strongest arguments that they suggest."  Kirkland v. Cablevision Sys., 760 F.3d 223, 224 (2d Cir. 2014) (per curiam) (citation and internal quotation marks omitted).  This does not mean that the Court is

---

[1] The language of § 1915 suggests an intent to limit availability of IFP status to prison inmates.  See 28 U.S.C. § 1915(a)(1) (authorizing the commencement of an action without prepayment of fees "by a person who submits an affidavit that includes a statement of all assets such prisoner possesses").  The courts have construed that section, however, as making IFP status available to any litigant who can meet the governing financial criteria.  See, e.g., Fridman v. City of N.Y., 195 F. Supp. 2d 534, 536 n.1 (S.D.N.Y. 2002).

required to accept unsupported allegations that are devoid of sufficient facts or claims.

Pro se litigants are "not exempt . . . from compliance with relevant rules of procedural

and substantive law[.]" Traguth v. Zuck, 710 F.2d 90, 95 (2d Cir. 1983) (citation

omitted).  Although detailed allegations are not required at the pleading stage, the

complaint must still include enough facts to provide the defendants with notice of the

claims against them and the grounds on which these claims are based.  See Ashcroft v.

Iqbal, 556 U.S. 662, 678 (2009); Bell Atlantic v. Twombly, 550 U.S. 544, 555-56 (2007).

Ultimately, the plaintiff must plead "enough facts to state a claim to relief that is

plausible on its face." Twombly, 550 U.S. at 570.  "A claim has facial plausibility when

the plaintiff pleads factual content that allows the court to draw the reasonable inference

that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citation

omitted).

Pleading guidelines are set forth in the Federal Rules of Civil Procedure ("Fed. R.

Civ. P.").  Specifically, Rule 8 provides that a pleading which sets forth a claim for relief

shall contain, among other things, "a short and plain statement of the claim showing that

the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2).  "The purpose . . . is to give fair

notice of the claim being asserted so as to permit the adverse party the opportunity to

file a responsive answer, prepare an adequate defense and determine whether the

doctrine of res judicata is applicable." Flores v. Graphtex, 189 F.R.D. 54, 55 (N.D.N.Y.

1999) (citations and internal quotation marks omitted).  Rule 8 also requires the

pleading to include "a short and plain statement of the grounds for the court's

jurisdiction" and "a demand for the relief sought . . . ." FED. R. CIV. P. 8(a)(1), (3).

Although "[n]o technical form is required," the Federal Rules make clear that each

allegation contained in the pleading "must be simple, concise, and direct." Id. at 8(d)(1).

Further, Rule 10 provides in pertinent part that:

> [a] party must state its claims or defenses in numbered
> paragraphs, each limited as far as practicable to a single set
> of circumstances.  A later pleading may refer by number to a
> paragraph in an earlier pleading.  If doing so would promote
> clarity, each claim founded on a separate transaction or
> occurrence – and each defense other than a denial – must
> be stated in a separate count or defense.

FED. R. CIV. P. 10(b).  This serves the purpose of "provid[ing] an easy mode of

identification for referring to a particular paragraph in a prior pleading[.]" Flores, 189

F.R.D. at 55 (citations and internal quotation marks omitted).  A complaint that fails to

comply with the pleading requirements "presents far too [] heavy [a] burden in terms of

defendants' duty to shape a comprehensive defense and provides no meaningful basis

for the Court to assess the sufficiency of their claims." Gonzales v. Wing, 167 F.R.D.

352, 355 (N.D.N.Y. 1996).  The Second Circuit has held that "[w]hen a complaint does

not comply with the requirement that it be short and plain, the court has the power, on

its own initiative . . . to dismiss the complaint." Salahuddin v. Cuomo, 861 F.2d 40, 42

(2d Cir. 1988) (internal citation omitted).  However, "[d]ismissal [] is usually reserved for

those cases in which the complaint is so confused, ambiguous, vague, or otherwise

unintelligible that its true substance, if any, is well disguised." Id. (citation omitted).  If

dismissal is warranted and the plaintiff is pro se, the court generally affords the plaintiff

leave to amend the complaint. See Simmons v. Abruzzo, 49 F.3d 83, 86-87 (2d Cir.

1995).

**B. Plaintiff's Amended Complaint**[2]

Plaintiff's amended complaint raises essentially the same claims as her original

complaint.  See generally Compl.; Am. Compl.  Plaintiff asserts that defendant was the

Ulster County Family Court Judge presiding over child custody proceedings between

her and her children's father.  See id. at 4, 8, 16-17.  Plaintiff claims that the children's

father was abusive towards plaintiff and the children.  See id. at 3.  Plaintiff states that

"since at least 2019, [she] filed a [custody] petition however [she] became ill and

temporarily required the care of a hospital."  Id. at 13.  Plaintiff submits a photocopy of

discharge instructions from Vassar Brothers Medical Center Emergency Department,

dated September 29, 2019, which indicated a Hematochezia[3] diagnosis for one of her

daughters.  See id. at 14, 16.[4]  Plaintiff also submits a discharge summary dated

December 12, 2019, which stated that plaintiff was "admitted to medicine service.  MRI

done was positive for stroke.  Patient started on stroke care measure medications.

Found to be B12 deficient and started on supplementation."  Id. at 15.  The hospital

summary notes that plaintiff had "iron deficiency secondary to dysfunctional uterine

bleeding.  Started on iron supplementation.  Pelvic ultrasound was negative for ovarian

or uterine lesions.  Patient with new onset diabetes, added on diabetic heart healthy

diet."  Id.  An "[e]chocardiogram was found to have global hypokinesis with ejection

fraction of 40-45%.  She was recommended to proceed with transesophageal

---

[2]  All unpublished opinions cited in this Report-Recommendation and Order, unless otherwise noted, have
been provided to plaintiff.

[3] Hematochezia is bleeding in the stools.  See Stedmans Medical Dictionary 397760 (Nov. 2014).

[4] Because of plaintiff's pro se status, the undersigned has considered the allegations in the amended
complaint along with the documents attached thereto. See, e.g., Anthony v. Murphy, No. 5:15-CV-00450
(DNH/TWD), 2015 WL 1957694, at *1 n.1 (N.D.N.Y. Apr. 28, 2015) ("[I]n light of [the p]laintiff's pro se
status, the Court has considered the allegations in, and attachments to, both [the p]laintiff's original and
amended/supplemental complaints upon its initial review."), report and recommendation adopted, No.
5:15-CV-450 (DNH/TWD), 2015 WL 3409261 (N.D.N.Y. May 27, 2015).

echocardiogram." Id.  The summary states, however, that "because Family Court judge did not consider her hospitalized status as justification to delay deciding custody for her minor children, with potential to release to their biological father, who has been accused of sexually molesting them, discharge was attested in order for patient to appear in family court." Id.  Plaintiff was "strongly encouraged to return for inpatient hospitalization management if symptoms were to recur." Id.

Plaintiff attests that she requested "to adjourn the court date for necessary provisions for health and safety[,]" but "[d]efendant steadfastly refused and denied with blatant disrespect for the well being of [p]laintiff." Am. Compl. at 16-17.  Plaintiff states that she arrived late to the court proceeding and her sister, who was already in attendance, informed plaintiff that defendant "harassed, intimidated, and threatened [plaintiff's sister] with incarceration if she interfered with watching [plaintiff's] children." Id. at 17.  Plaintiff asserts that "[i]t was at this Court's first appearance where the [d]efendant on his own accord without explanation changed custody[]" in favor of the children's father. Id.  Plaintiff states that she was "[s]ick, crushed, and in depair[.]" Id. She attests that "[l]ater that day," she received an email from her children's school which explained that the children's father said that "he is not able to have the girls with him at the moment and wishes for them to remain with their mother until he has prepared for them." Id. at 17-18.

On the first page of her amended complaint, plaintiff states that she is

seeking zero monetary damages, punitive damages, injunctive relief with penalties under [] 42 U.S.C. § 1988, declaratory judgment, pursuant to 18 U.S.C. §§ 241 and 242, 42 U.S.C. § 1985, 42 U.S.C. § 12203, 42 U.S.C. § 12182, 42 U.S.C. § 12301(3)(5)(7)(A)(B), Title II claim of American Disabilities Act, seeking, appointed counsel and in the alternative, tortious

interference with parental rights under the common law and for such other relief The Court deems just and appropriate.

Am. Compl. at 1.  In her "claims for relief[,]" plaintiff states that she "seeks all prescribed relief stated throughout this action" and specifically prays for the appointment of counsel, a jury trial, and "[a] judgment against [d]efendant for costs and such other relief as the Court may deem appropriate."  Id. at 24.[5]

### C.  Analysis

#### 1.  Miscellaneous Statutes

Plaintiff cites a string of statutes under which she purports to assert causes of action.  See Am. Compl. at 1.  First among them is 42 U.S.C. § 1988.  See id. "[Section] 1988 does not provide an independent cause of action, but instead provides a mechanism by which particular remedies may be sought in civil rights actions." Solomon v. City of Rochester, 449 F. Supp. 3d 104, 113 (W.D.N.Y. 2020) (citation and quotation marks omitted).  Plaintiff also cites 18 U.S.C. §§ 241 and 242.  See Am. Compl. at 1.  These statutes concern criminal conspiracy and criminal deprivation of rights under the color of law, but "they do not provide a private right of action to civil litigants."  Burke v. APT Found., 509 F. Supp. 2d 169, 173 (D. Conn. 2007) (citations omitted); see 18 U.S.C. §§ 241, 242.  Next, plaintiff cites 42 U.S.C. § 12301(3), (5), (7)(A)(B).  See Am. Compl. at 1.  This statute explains a Congressional policy enacted as part of its Helping America's Youth initiative and the provisions that plaintiff references discuss the importance of children's health and safety.  See 42 U.S.C. §

---

[5] Plaintiff submits a letter addressed to defendant wherein she complained that her children's appointed attorney, William Pape, was ineffective, and she sought a different attorney.  See Am. Compl. at 8. Plaintiff does not make any substantive allegations against Mr. Pape in her amended complaint or name him as a defendant.  See generally Am. Compl.

12301(3), (5), (7)(A)(B).  However, the policy states that it "is not intended to, and does

not, create any right or benefit, substantive or procedural, enforceable at law or in

equity, by any party against the United States, its departments, agencies, or entities, its

officers, employees, or agents, or any other person."  Improving the Coordination and

Effectiveness of Youth Programs, Exec. Order No. 13459, § 6(c), 73 FR 8003 at *8005.

Accordingly, it is recommended that any purported claims under 42 U.S.C. § 1988, 18

U.S.C. §§ 241 and 242, and 42 U.S.C. § 12301, are dismissed with prejudice and

without leave to amend as plaintiff cannot state a cognizable claim.[6]

### 2.  42 U.S.C. § 1985

"Section 1985 prohibits conspiracies to deprive individuals of civil rights."

Johnson v. City of New York, 669 F. Supp. 2d 444, 451 (S.D.N.Y. 2009); see Am.

Compl. at 1.  As an initial matter, defendant is immune from suit under 42 U.S.C. § 1985

to the extent she seeks damages.  See Walker v. Rivera, No. 1:22-CV-560 (DNH/TWD),

2022 WL 2341544, at *4 (N.D.N.Y. June 29, 2022) (explaining that judicial immunity

"immunizes [] judges from [] causes of action [] assert[ed] under both 42 U.S.C. § 1983

and § 1985."), report and recommendation adopted, 2022 WL 2805477 (N.D.N.Y. July

18, 2022).

"It is well-established that judges have absolute immunity from suit for acts

performed in their judicial capacities."  Cruz v. N.Y., No. 5:17-CV-00510 (BKS/TWD),

2017 WL 6021838, at *18 (N.D. N.Y. Oct. 27, 2017) (citing Bradley v. Fisher, 80 U.S.

335 (1871); Mireles v. Waco, 502 U.S. 9, 11(1991)), report and recommendation

---

[6] At the end of her amended complaint, plaintiff recites the standards for a motion for summary judgment pursuant to Fed. R. Civ. P. 56 and caselaw concerning qualified immunity.  See Am. Compl. at 18-21. Neither are applicable to the standards applied at this stage.

adopted, 2017 WL 6001833 (N.D.N.Y. Dec. 4, 2017).  "Immunity from suit is overcome in only two narrow circumstances.  [] [A] judge is not immune from liability for . . . actions not taken in a judge's judicial capacity . . . [and] for actions, though judicial in nature, taken in the complete absence of all jurisdiction."  Id. (citations and quotation marks omitted).  "The Supreme Court has 'generally concluded that acts arising out of, or related to, individual cases before the judge are judicial in nature.'"  Id. (quoting Bliven v. Hunt, 579 F.3d 204, 210 (2d Cir. 2009)).  "Judges enjoy absolute immunity even when a plaintiff offers allegations of 'bad faith or malice.'"  Id. (quoting Mireles, 502 U.S. at 11).  "Whether an act by a judge is a 'judicial one' relates to the 'nature of the act itself'— whether it is a function that is necessarily performed by a judge."  Amato v. McGinty, No. 1:17-CV-593 (MAD/ATB), 2017 WL 9487185, at *3 (N.D.N.Y. June 6, 2017) (quoting Mireles, 02 U.S. at 12), report and recommendation adopted, 2017 WL 4083575 (N.D.N.Y. Sept. 15, 2017).  "The parties must have dealt with the judge in his or her 'judicial capacity.'"  Id. (citation omitted).

Plaintiff contends that defendant was acting outside of his judicial capacity, and instead as "a witness" when he changed a custody order.  Am. Compl. at 17.  Although plaintiff asserts that defendant altered the custody agreement "on his own accord" and "without explanation[,]" custody orders are a judicial function of a family court judge.  Id.; see Amato, 2017 WL 9487185, at *3 ("[A]ll of Judge McGinty's alleged 'biased' or 'illegal' conduct was taken in connection with his position as a Family Court judge presiding over plaintiff Amato's custody case.  Whether the judge's conduct involved issuing orders based on 'funding,' allegedly biased decisions in favor of defendant [], or making decisions that were not in the best interest of [the child], these were all actions

9

taken in the course of a custody proceeding in his capacity as a Family Court Judge. Thus, Judge McGinty is entitled to judicial immunity."); Walker v. Fam. Ct. Judge Catherine Cholakis, No. 1:19-CV-1288 (LEK/CFH), 2020 WL 3503158, at *7 (N.D.N.Y. June 29, 2020) (citation quotation marks omitted) (determining that the defendant was entitled to judicial immunity despite allegations of the defendant "lack[ing] judicial competence and exhibit[ing] personal animus and bias" towards the plaintiff).

    As defendant was acting in his judicial capacity as a family court judge when he changed the custody order, he is entitled to judicial immunity as to plaintiff's purported § 1985 claim against him in his individual capacity to the extent plaintiff seeks punitive damages.[7] See Cruz, 2017 WL 6021838, at *18 ("Because the allegations in [the p]laintiff's complaint indicate that his claims against [various defendants] were all related to the support, visitation, and/or custody proceedings between [the p]laintiff and [his wife], the Court finds that they are all entitled to judicial immunity and recommends dismissal of [the p]laintiff's complaint against them with prejudice on judicial immunity grounds."); Bliven v. Hunt, 418 F. Supp. 2d 135, 137 (E.D.N.Y. 2005) ("Judges are absolutely immune from liability for judicial acts, however erroneous the act and however evil the motive."); Kampfer v. Scullin, 989 F. Supp. 194, 202 (N.D.N.Y. 1997) ("[T]he doctrine of absolute judicial immunity bars suits for monetary damages, including compensatory and punitive damage suits."). Additionally, defendant is immune from suit under the Eleventh Amendment to the extent plaintiff seeks to sue him in his "judicial" or official capacity for damages. See Washington v. Ciccone, No. 3:21-CV-0564 (MAD/ML), 2021 WL 2935950, at *4 (N.D.N.Y. July 13, 2021) ("While judicial

---

[7] Plaintiff states that see seeks "zero monetary damages, punitive damages[.]" Am. Compl. at 1. It is unclear whether the "zero" extends to punitive damages. Id.

immunity shields judges from suit to the extent they are sued in their individual capacities, the Eleventh Amendment shields judges from suit to the extent that they are sued in their official capacities."), report and recommendation adopted, 2021 WL 4859663 (N.D.N.Y. Oct. 19, 2021); Hines v. City of Albany, 542 F. Supp. 2d 218, 227 (N.D.N.Y. 2008)) ("Claims against a government employee in his official capacity are treated as a claim against the municipality[.]").

"Although the doctrine of judicial immunity provides that a judge is not liable for damages for acts performed in the exercise of her judicial function, judicial immunity does not bar actions seeking prospective injunctive relief against judicial officers.  Nor does judicial immunity bar actions seeking declaratory relief."  Estes-El v. Town of Indian Lake, 954 F. Supp. 527, 534 (N.D.N.Y. 1997) (citations omitted).  Further, "the Eleventh Amendment does not bar a suit against a state official when that suit seeks . . . prospective injunctive relief."  Nassau & Suffolk Cnty. Taxi Owners Ass'n, Inc. v. State, 336 F. Supp. 3d 50, 65 (E.D.N.Y. 2018) (citations and quotation marks omitted).  However, "[w]hen 'only past acts are involved,' declaratory relief is unavailable."  Guan v. Mayorkas, 530 F. Supp. 3d 237, 255 (E.D.N.Y. 2021) (citations omitted).  Plaintiff's allegations concern only past acts; therefore, she is not entitled to declaratory relief.  See, e.g., Amato v. McGinty, No. 1:21-CV-00860 (GLS/TWD), 2022 WL 226798, at *8 (N.D.N.Y. Jan. 26, 2022).  Moreover, whether plaintiff seeks the Court's involvement in past custody orders or ongoing custody proceedings, both requests are likely barred by the Younger and Rooker-Feldman doctrines.  See Younger v. Harris, 401 U.S. 37 (1971); Rooker v. Fidelity Trust Co., 263 U.S. 413; District of Columbia Court of Appeals v. Feldman, 460 U.S. 462 (1983).

"[T]he Supreme Court has established that plaintiffs can properly bring a federal action 'seeking injunctive relief against a state official for an ongoing violation of law or the Constitution.'" Torres v. New York State Dep't of Corr. & Cmty. Supervision, No. 9:20-CV-301 (GLS/TWD), 2020 WL 7316120, at *3 (N.D.N.Y. Dec. 11, 2020) (citations omitted); see Ex Parte Young, 209 U.S. 123 (1908)).  "Under this doctrine, an action may proceed against a state official when a plaintiff: '(a) alleges an ongoing violation of federal law, and (b) seeks relief properly characterized as prospective.'" Id. (quoting In re Deposit Ins. Agency, 482 F.3d 612, 618 (2d Cir. 2007)).  However, under the Younger abstention doctrine, "federal courts are forbidden from enjoining ongoing state proceedings." McKnight v. Middleton, 699 F. Supp. 2d 507, 520 (E.D.N.Y. 2010), aff'd, 434 F. App'x 32 (2d Cir. 2011) (summary order) (citation omitted).  "The *Younger* abstention doctrine is limited to three exceptional circumstances, including: (1) state criminal prosecutions; (2) civil enforcement, or 'quasi-criminal,' proceedings; and (3) 'civil proceedings involving certain orders that are uniquely in furtherance of the state courts' ability to perform their judicial functions.'" Walker, 2022 WL 2341544, at *6 (quoting Sprint Communications, Inc. v. Jacobs, 571 U.S. 69 (2013)).  "*Younger* abstention is mandatory when three conditions are met: '(1) there is an ongoing state proceeding; (2) an important state interest is implicated in that proceeding; and (3) the state proceeding affords the federal plaintiff an adequate opportunity for judicial review of the federal constitutional claims.'" McKnight, 699 F. Supp. 2d at 520.

It is unclear whether there are pending family court proceedings in which plaintiff seeks the Court's intervention.  See generally Am. Compl.[8]  However, "the heart of this

---

[8] Plaintiff attaches to her amended complaint protective orders against the children's father from December 2015 and March and October 2019, a visitation order from April 2019, and a family offense

case is a child custody dispute, a matter rightfully reserved for state courts." McKnight, 699 F. Supp. 2d at 520; see Walker, 2022 WL 2341544, at *6 (collecting cases applying Younger abstention in the context of child custody disputes). Additionally, "[p]laintiff would [likely] have 'an adequate opportunity for judicial review of the federal [] claims' in state court." McKnight, 699 F. Supp. 2d at 520-21 (quoting McGowan, 282 F.3d at 198). "For example, after the Family Court makes its final disposition on custody and visitation, [the p]laintiff may appeal that decision to the Appellate Division and raise the unconstitutionality of the N.Y. Dom. Rel. Law and the orders of the Family Court . . . in that court." Id. Thus, it is likely that plaintiff's request for injunctive or declaratory relief are barred insofar as there are pending custody proceedings.

Next, any claim asking the Court to provide a declaratory judgment on a prior custody order is barred by the Rooker-Feldman doctrine. "The *Rooker-Feldman doctrine* bars federal district courts from hearing cases that in effect are appeals from state court judgments, because the Supreme Court is the only federal court with jurisdiction over such cases." Dorce v. City of N.Y., 2 F.4th 82, 101 (2d Cir. 2021). For the Rooker-Feldman doctrine to apply: "(1) the federal-court plaintiff must have lost in state court[;] (2) the plaintiff must complain of injuries caused by a state-court

---

petition from October 2019. See Am. Compl. at 5-7, 9-12. In her original complaint, plaintiff specifically requested "injunctive relief and a permanent restraining order against [defendant] to stop his abuse and to avoid any further harm." Compl. at 6. She also sought declaratory relief in the form of statements that (1) "the policies, practices, procedures and standards [of d]efendant apply to her contested lawsuit proceedings, contested motion hearings and trail to issued Custody and related Orders are 'program activities'[; (2)] Custody Order are 'services' as defined by ADA which ADA equal rights, opportunities and benefits, direct threat risk prevention modification rights and accommodation rights apply to[; and (3)] declar[e d]efendant[']s [] practices . . . a[s] unconstitutional." Id. at 5. The undersigned previously noted that any relief concerning past custody orders and any intervention into ongoing family court proceedings are likely barred by the Younger and Rooker-Feldman doctrines. See Dkt. No. 6 at 16, n.7. Plaintiff does not state in her amended complaint the precise declaratory or injunctive relief she seeks. See generally Am. Compl.

judgment[;] (3) the plaintiff must invite district court review and rejection of that

judgment[;] and (4) the state-court judgment must have been rendered before the

district court proceedings commenced."  Id. (citation and quotation marks omitted).

It appears that plaintiff is challenging Judge McGinty's December 2019 custody

order granting the children's father custody.  See Am. Compl. at 17.  Intervention into

that custody order is barred by the Rooker-Feldman doctrine.  See Phifer v. City of N.Y.,

289 F.3d 49, 57 (2d Cir. 2002) ("There is no question that Rooker-Feldman bars [the

plaintiff's] challenges to the family court's decisions regarding custody, neglect, and

visitation."); Amato, 2022 WL 226798, at *11 (citation omitted) ("[I]t appears [the p]laintiff

'lost' in state court, complains of injuries caused by the state court judgments, and asks

this Court to invalidate the state court's judgments regarding child custody.  Thus, as

currently drafted, the amended complaint is likely barred under the Rooker-Feldman

doctrine.").

Plaintiff also fails to state a claim for relief under § 1985.  To plead a conspiracy

claim, "a plaintiff must allege: (1) a conspiracy"; "(2) for the purpose of depriving a

person or class of persons of the equal protection of the laws, or the equal privileges or

immunities under the laws;" "(3) an overt act in furtherance of the conspiracy;" "and (4)

an injury to the plaintiff's person or property, or a deprivation of a right or privilege of a

citizen of the United States."  Thomas v. Roach, 165 F.3d 137, 146 (2d Cir. 1999).  In

her amended complaint, plaintiff states that "this case involves a multifaceted campaign

to silence, harass, and discredit [p]laintiff for exercising her freedoms and rights

afforded and protected by United States Law."  Am. Compl. at 2.  Plaintiff has only

named one defendant and she does not otherwise allege any facts that would support a

14

conspiracy claim.  See generally Am. Compl.; see also Thomas, 165 F.3d at 146 (citations omitted) (explaining that "[a] conspiracy 'need not be shown by proof of an explicit agreement but can be established by showing the parties have a tacit understanding to carry out the prohibited conduct.'"); see also Walker, 2022 WL 2341544, at *5 (citation and quotation marks omitted) ("[T]he conspiracy must also be motivated by some racial or perhaps otherwise class-based, invidious discriminatory animus behind the conspirators' action.").  Accordingly, it is recommended that plaintiff's purported § 1985 claim seeking injunctive and declaratory relief against defendant in his individual and official capacities be dismissed without prejudice, but be dismissed with prejudice and without leave to amend to the extent she seeks punitive damages.

### 3.  ADA Claims

Plaintiff's amended complaint raises three ADA claims: Title II discrimination and retaliation claims and a Title III discrimination claim.  See generally Am. Compl. (citing, inter alia, 42 U.S.C. §§ 12182 and 12203, and "Title II claim of American Disabilities Act").  First, "Title III of the ADA proscribes discrimination against the disabled in public accommodations[,]" stating that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns . . . or operates a place of public accommodation."  Powell v. Nat'l Bd. of Med. Examiners, 364 F.3d 79, 85 (2d Cir.), opinion corrected, 511 F.3d 238 (2d Cir.  2004) (quoting 42 U.S.C. § 12182(a)); see Benyi v. N.Y., No. 3:20-CV-1463 (DNH/ML), 2021 WL 1406649, at *14 (N.D.N.Y. Mar. 23, 2021) ("Title III 'expressly does not apply to public entities, including local governments.'"), report and recommendation

adopted, 2021 WL 1404555 (N.D.N.Y. Apr. 13, 2021) (citations omitted).  As plaintiff

brings this action against Judge McGinty, whose position is not a "public

accommodation[,]" she cannot state a claim under Title III of the ADA, and it is

recommended that any purported claim be dismissed with prejudice and without leave

to amend.  42 U.S.C. § 12181(7).

Second, as to her Title II claims, the undersigned previously explained in its April

28, 2022, Report-Recommendation and Order, that defendant cannot be sued in his

individual capacity under the ADA.  See Dkt. No. 6 at 10-11.  Judge Suddaby

subsequently adopted the Report-Recommendation and Order and dismissed with

prejudice the ADA claims against defendant in his individual capacity.  See Dkt. No. 8 at

3.  As such, the only purported ADA claims that the undersigned now addresses are

those seeking to sue defendant in his "judicial" or official capacity.  See Rosenfield v.

N.Y. State Div. of Veterans' Affs., No. 1:18-CV-1299 (GTS/CFH), 2019 WL 4621962, at

*10 (N.D.N.Y. Sept. 24, 2019) (collecting cases) ("It is well recognized in this Circuit that

individuals cannot be sued in their personal capacity under either the ADA or the

Rehabilitation Act.").

Generally, "suits for money damages against state officials in their official

capacities are barred by the Eleventh Amendment."  Torres, 2020 WL 7316120, at *3.  It

does not appear that plaintiff seeks money damages in her amended complaint as she

states that she is seeking "zero money damages, punitive damages . . . ."  Am. Compl.

at 1.  It is not clear whether plaintiff intended the "zero" to extend to punitive damages;

regardless, punitive damages are not an available remedy for an ADA discrimination

claim.  See Cosby v. Tawanna, No. 3:19-CV-401 (MPS), 2019 WL 1921709, at *5 (D.

16

Conn. Apr. 30, 2019) (citing <u>Barnes v. Gorman</u>, 536 U.S. 181, 189, (2002) ("Because punitive damages may not be awarded in private suits brought under Title VI of the 1964 Civil Rights Act, it follows that they may not be awarded in suits brought under § 202 of the ADA and § 504 of the Rehabilitation Act.")) (explaining that "[p]unitive damages are not available in private suits under the ADA or the [Rehabilitation Act]."); <u>see</u> <u>also</u> <u>Askins v. N.Y.C. Transit</u>, No. 11-CV-6371 (PGG), 2013 WL 142007, at *6 (S.D.N.Y. Jan. 8, 2013) (same).[9]   Declaratory relief under the ADA is also unavailable. <u>See Torres</u>, 2020 WL 7316120, at *4; <u>see</u> <u>also</u> <u>T.W. v. N.Y. State Board of Law Examiners</u>, 16-CV-3029 (RJD/MMH), 2022 WL 2819092, at *8 (E.D.N.Y. July 19, 2022) ("The declaratory relief T.W. seeks — a declaration that the individual Board member defendants violated Title II — is plainly foreclosed by the *Ex parte Young* doctrine."). However, "prospective injunctive relief [] may be asserted against [] individual defendants [] in their official capacities[]" under Title II of the ADA.  <u>Harris v. Mills</u>, 572 F.3d 66, 72 (2d Cir. 2009).[10]

Whether punitive damages are available for an ADA retaliation claim is not as straightforward as the Second Circuit has not explicitly addressed the issue.  <u>See Edwards v. Brookhaven Sci. Assocs., LLC</u>, 390 F. Supp. 2d 225, 234 (E.D.N.Y. 2005) (citations omitted) (explaining that "the Second Circuit, without analyzing the issue, has affirmed an award of compensatory damages in a retaliation case brought under the

---

[9] If plaintiff were to seek monetary damages, the undersigned incorporates by reference its discussion in its April 28, 2022, Report-Recommendation and Order concerning Congress' abrogation of Eleventh Amendment immunity concerning money damages.  <u>See</u> Dkt. No. 6 at 14, n.6; <u>see also</u> <u>Colliton v. D'Alessio</u>, No. 22-CV-7200 (LTS), 2022 WL 4110191, at *3, n.2 (S.D.N.Y. Sept. 6, 2022) (citations omitted) (declining to address whether Congress abrogated sovereign immunity for Title II claims that "actually violate[] the Fourteenth Amendment" because the plaintiff "fail[ed] to state a claim under Title II of the ADA).

[10] The undersigned notes, however, that the <u>Younger</u> doctrine cautions against interfering with ongoing family court matters.  <u>See supra</u> at 11-14; <u>see also</u> <u>Amato</u>, 2022 WL 226798, at *11.

ADA[]"; "employees who prevail on a claim under Title I of the ADA may recover compensatory and punitive damages and demand and receive a trial by jury[]" and the remedies available for retaliation under the ADA are commensurate with those available under Title I[.]").  At this juncture, the undersigned need not determine whether plaintiff could recover punitive damages for an ADA retaliation claim because, as explained infra, plaintiff has not sufficiently stated a claim for relief.

### a. Discrimination

To support an ADA discrimination claim, "a plaintiff must show the following: (1) plaintiff is a qualified individual with a disability; (2) plaintiff was excluded from participation in a public entity's services, programs or activities or was otherwise discriminated against by [the] public entity; and (3) such exclusion or discrimination was due to [plaintiff's] disability."  B.C. v. Mount Vernon Sch. Dist., 837 F.3d 152, 158 (2d Cir. 2016) (citation and quotation marks omitted).  "Although the scope of Title II is not limitless, the phrase services, programs, or activities has been interpreted to be a catch-all phrase that prohibits all discrimination by a public entity."  Hulett v. City of Syracuse, 253 F. Supp. 3d 462, 484 (N.D.N.Y. 2017) (quoting, inter alia, Noel v. N.Y.C. Taxi & Limousine Comm'n, 687 F.3d 63, 68 (2d Cir. 2012)) (quotation marks and internal citation omitted).[11]

As with her original complaint, here too, plaintiff's claim fails because she has not plausibly alleged a "disability."  Dkt. No. 6 at 13-15.  The ADA defines "disability" as "(A) a physical or mental impairment that substantially limits one or more major life activities

---

[11] The undersigned incorporates by reference its previous discussion concerning whether defendant is a "public entity"—an analysis that the undersigned need not perform as plaintiff has not alleged sufficient facts to surpass the threshold "disability" inquiry.  See Dkt. No. 6 at 12, n.5; 14-15, n.6.

18

of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment[]."  42 U.S.C. § 12101(1).

### i. Whether plaintiff has, or has a record of, a physical or mental impairment that substantially limits one or more major life activities

"[A] plaintiff who seeks to show that he [or she] is disabled within the meaning of the ADA must do more than 'merely submit evidence of a medical diagnosis of an impairment.'"  Sussle v. Sirina Prot. Sys. Corp., 269 F. Supp. 2d 285, 305 (S.D.N.Y. 2003) (quoting Toyota Motor Mfg., Kentucky, Inc. v. Williams, 534 U.S 184, 198 (2002), overturned on other grounds by ADA Amendments Act of 2008, Pub. L 110-325, 122 Stat. 3553 (Jan. 1, 2009)).  "A diagnosis alone is insufficient to establish disability under the statute."  Ibela v. Allied Universal, No. 21-1995-CV, 2022 WL 1418886, at *2 (2d Cir. May 5, 2022) (citing Toyota Motor Mfg., 534 U.S at 198).  Additionally, "major life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working[]"; as well as "major bodily functions" such as "functions of the immune system, normal cell growth, digestive, bowel, bladder, neurological, brain, respiratory, circulatory, endocrine, and reproductive functions' within the definition of 'major life activities.'"  42 U.S.C. § 12102(2)(A),(B).

The Second Circuit has clarified that "the substantial-limitation requirement in the definition of 'disability' is not an exacting one."  Hamilton v. Westchester Cnty., 3 F.4th 86, 92 (2d Cir. 2021)).  The substantial-limitation inquiry "usually will not require scientific, medical, or statistical analysis," and is "made without regard to the

ameliorative effects of mitigating measures[.]"  29 C.F.R. § 1630.2(j)(1)(v), (vi); see also 42 U.S.C. 12102(4)(E).  Additionally, "a plaintiff's actual disability claim under the ADA does not fail solely because he [or she] failed to "state that his [or her disability] will be permanent or chronic . . . [or] indicate the duration or long-term impact of his [or her] impairment such that the Court may infer that his [or her] injury was not temporary."  Id. at 93-94 (citation and quotation marks omitted) (alterations in original).  However, "[w]hile an impairment lasting less than six months *can* constitute a disability since the 2008 amendments, it obviously does not follow that such an impairment *will* constitute a disability."  Id. (citation omitted); see 28 C.F.R. § 35.108(d)(1)(i).

Plaintiff does not explicitly state what her "disability" is but asserts that she had a stroke and was hospitalized, and that defendant did not believe her hospitalization and "her health and safety" were reason enough to adjourn the custody proceeding.[12]  Am. Compl. at 13-17.  Plaintiff has not alleged any facts explaining how her stroke or hospitalization substantially limited one or more of her major life activities.  See generally Am. Compl.  In the hospital record documenting plaintiff's stroke, it was noted that an "[e]chocardiogram was found to have global hypokinesis with ejection fraction of 40-45%."  Id. at 15.  The hospital record also notes that plaintiff was diabetic and had low iron form uterine bleeding.  See Am. Compl. at 15.  However, plaintiff does not allege that either of these conditions caused her hospitalization or are a "disability."  See generally Am. Compl.

---

[12] As explained in the undersigned's April 28, 2022, Report-Recommendation and Order, in her original complaint, plaintiff alleged that because of defendant's actions, she developed post-traumatic stress disorder ("PTSD").  See Dkt. No. 6 at 14-15; see also Compl. at 14.  Plaintiff does not reallege any facts related to PTSD in her amended complaint.  See generally Am. Compl.

Although plaintiff provided documentation to corroborate that she was in the hospital following a stroke, there is no indication of how it limited her activities. See id. at 15-16. This is insufficient to establish a "disability." See Ouderkirk, 2021 WL 4958845, at *5 (determining that the plaintiff's complaint "failed to allege facts plausibly suggesting that [the p]laintiff is disabled within the meaning of the ADA" where the plaintiff alleged that the defendant "took [the p]laintiff's arm brace that she 'wore for a disability and subjected her to several weeks of physical pain.'"); but see Bernheim v. N.Y.C. Dep't of Educ., No. 19-CV-9723 (VEC/JLC), 2021 WL 2619706, at *8 (S.D.N.Y. June 25, 2021) (concluding that the plaintiff "sufficiently alleged a disability under the ADA by pleading" "that her severe [irritable bowel syndrome ("IBS")] has substantially limited her ability to work. Specifically, she alleges that due to her severe IBS, she has had to 'take a number of absences on an intermittent basis' and also points to a 'six month medical sabbatical' she took for her condition. . . .  [The plaintiff] has thus sufficiently alleged a disability under the ADA by pleading that the irregularity of her bowel functions, due to her 'severe' IBS, limited her ability to attend her teaching job on an intermittent to long term basis."), report and recommendation adopted, 2021 WL 4198126 (S.D.N.Y. Sept. 15, 2021); Blair v. SUNY Univ. at Buffalo, No. 17-CV-1317S, 2020 WL 695870, at *6 (W.D.N.Y. Feb. 11, 2020) (explaining that the plaintiff's complaint referring "to a need for 'frequent visits to the bathroom' to manage his Crohn's disease[]" and "his allegation of 'low blood volume'" is sufficient to establish a disability).

It is generally known that that a stroke impacts numerous functions including, for example, walking, memory, emotion regulation, and talking.[13]  Plaintiff's echocardiogram also indicated that she had an "ejection fraction[.]"  Am. Compl. at 15. If an ejection fraction is between forty to fifty-five percent, that is "[b]elow normal heart function.  Can indicate previous heart damage from heart attack or cardiomyopathy."[14] This result appears to indicate that plaintiff's circulatory system was not functioning perfectly.  See 42 U.S.C. § 12102 (including "the operation of a major bodily function" such as "circulatory" in the definition of "a major life activity").  However, neither the hospital reports, nor plaintiff's amended complaint indicate how plaintiff's impairments substantially limited her in one or more major life activity and it was only through the undersigned's independent research that it learned of the symptoms from a stroke and an ejection fraction that may be experienced by the general public.  See generally Am. Compl.; see O'Connor v. N.Y. State Dep't of Fin. Servs., No. 1:21-CV-00828 (BKS/ATB), 2022 WL 3998099, at *3 (N.D.N.Y. Sept. 1, 2022) (The "[p]laintiff fails to identify any activity that her depression or PTSD impairs.  But even assuming [the p]laintiff sufficiently alleged the first two steps with respect to hearing loss, depression, and PTSD, the Amended Complaint is devoid of factual details that would allow an inference that these impairments 'substantially limit' any major life activity.");  Owens v. Longo, No. 06-CV-0281 (GLS/DRH), 2008 WL 84594, at *6 (N.D.N.Y. Jan. 7, 2008) ("[A] plaintiff will not automatically be found disabled upon presentation of records of a

---

[13] Stedmans Medical Dictionary 397760 (Nov. 2014); Mayo Clinic, Stroke, https://www.mayoclinic.org/diseases-conditions/stroke/symptoms-causes/syc-20350113 (last visited September 26, 2022).
[14] Ejection Fraction: What the Numbers Mean, Penn Heart and Vascular Blog, (April 13, 2022), https://www.pennmedicine.org/updates/blogs/heart-and-vascular-blog/2022/april/ejection-fraction-what-the-numbers-mean.

medical appointment or surgery regarding an impairment."), aff'd, 326 F. App'x 626 (2d

Cir. 2009) (summary order); Horwitz v. L. & J.G. Stickley, Inc., 20 F. App'x 76, 80 (2d

Cir. 2001) (summary order) ("Because past hospitalization, even coupled with continued

treatment, does not create a record of a substantially limiting medical condition, the

plaintiff was not protected by the ADA.").

Although the standards to be applied are liberal for pro se plaintiffs and the

definition of "disability" is to be construed broadly, plaintiff has failed to allege any facts

concerning how any impairment limits her major life activities other than her being in a

generally "weakened[,]" "[s]ick," and "crushed" state. Am. Compl. at 17. This is

insufficient to plead a qualifying disability under the ADA. See O'Connor, 2022 WL

3998099, at *3 (citations omitted) ("While courts broadly apply the term 'substantially

limits,' a '[p]laintiff still must plead sufficient facts to raise a right to relief above a

speculative level.'").

**ii. Whether plaintiff was "regarded as" having an impairment that substantially limits one or more major life activities**

A "disability" can be established if an individual is "regarded as having" an

impairment that substantially limits one or more major life activities. 42 U.S.C. §

12102(1)(C). An individual can be "regarded as having such an impairment" "if the

individual establishes that he or she has been subjected to an action prohibited under

this Act because of an actual or perceived physical or mental impairment whether or not

the impairment limits or is perceived to limit a major life activity." Id. § 12102(3)(A). A

"plaintiff need only establish that [the] defendant regarded him [or her] as having a

mental or physical impairment and is 'not required to present evidence of how or to what

degree [defendant] believed the impairment affected him [or her].'"  Rodriguez v. Verizon Telecom, No. 13-CV-6969 (PKC/DCF), 2014 WL 6807834, at *5 (S.D.N.Y. Dec. 3, 2014) (quoting Hilton v. Wright, 928 F. Supp. 2d 530, 554 (N.D.N.Y. 2013)). However, "[a]n individual is not 'regarded as having [a disability]' if the public entity demonstrates that the impairment is, objectively, both 'transitory' and 'minor,' with 'transitory' statutorily defined as 'lasting or expected to last six months or less.'" Hamilton v. Westchester Cnty., 3 F.4th 86, 94 (2d Cir. 2021) (quoting 28 C.F.R. § 35.108(f)(2)); see also 42 U.S.C. § 12102(3)(B).

Plaintiff asserts that she "made a reasonable request to adjourn the court date and necessary for the provisions of her health and safety[.]"  Am. Compl. at 16-17.  The hospital record similarly states that "because Family Court judge did not consider her hospitalized status as justification to delay deciding on custody for her minor children, . . . discharge was attested in order for patient to appear in family court."  Id. at 15. There is no indication of what defendant was told or believed concerning plaintiff's "hospitalization[,]" such as whether or what physical or mental impairment plaintiff had or how long it would last.[15]  Id.  Whether a plaintiff is "regarded" as having a disability is "a question of intent[.]"  Francis v. City of Meriden, 129 F.3d 281, 284 (2d Cir. 1997). Plaintiff has not alleged what defendant believed or perceived concerning an impairment.  See generally Am. Compl.  For instance, there is no indication if defendant believed the veracity of plaintiff's statement that she was in the hospital, or that she was

---

[15] In plaintiff's original complaint, she specified that her family court attorney told defendant that plaintiff had a stroke.  See Compl. at 6.  However, even if plaintiff had repleaded this specific information, plaintiff has not sufficiently alleged what defendant's belief was concerning any impairment.  See generally Am. Compl.  Plaintiff is reminded that amended pleadings are intended to completely replace prior complaints and she must include all of the allegations, without reference to a prior complaint, that she seeks to base her claims on.

suffering from any mental or physical impairment.  See Sacks v. Gandhi Eng'g Inc., No. 11-CV-5778 (DAB/DF), 2013 WL 8282955, at *13 (S.D.N.Y. Aug. 23, 2013) (citing 29 C.F.R. § 1630.2(h)(1) ("Physical or mental impairment" to mean "[a]ny physiological disorder or condition, cosmetic disfigurement, or anatomical loss affecting one or more body systems, such as neurological, musculoskeletal, special sense organs, respiratory (including speech organs), cardiovascular, reproductive, digestive, genitourinary, immune, circulatory, hemic, lymphatic, skin, and endocrine.")) (concluding that there was sufficient evidence to withstand summary judgment where the defendant told the plaintiff he was fired because of "his lack of 'agility'"), report and recommendation adopted, 999 F. Supp. 2d 629, 636 (S.D.N.Y. 2014); see also Laface v. E. Suffolk Boces, 349 F. Supp. 3d 126, 147 (E.D.N.Y. 2018) (citation omitted) ("While the [p]laintiff has alleged that he informed the [d]efendants of his disability, he has not alleged that his employer, BOCES, regarded him as disabled under the ADA.  In fact, even when BOCES agreed to temporarily accommodate his disability, [a defendant] specifically noted that 'it is not clear we are obligated to provide you with an accommodation.'").

Accordingly, plaintiff has not shown that she was "regarded as" having a disability within the meaning of the ADA.  Cf. Gentile v. Potter, 509 F. Supp. 2d 221, 238 (E.D.N.Y. 2007) (citation omitted) ("Mere knowledge is insufficient to prove 'either that the employer regarded the employee as disabled or that the perception caused the adverse employment action.'").  As plaintiff has not sufficiently plead a "disability" or that defendant "regarded" her as having a disability, the undersigned recommends dismissing plaintiff's ADA discrimination claims against defendant in his official capacity without prejudice.

As to the undersigned's April 28, 2022, Report-Recommendation and Order discussion concerning the sufficiency of the original complaint and whether plaintiff was denied access to services "because of" a disability, the undersigned clarifies that it does not appear that plaintiff is making an intentional discrimination claim.  Dkt. No. 6 at 13-15.  Rather, plaintiff is making a reasonable accommodation claim.  See Am. Compl. at 2, 16-17.  To plead such a claim, plaintiff is not "required [to] pro[ve] that the defendants' actions were motivated by animus towards the [disabled]."  Amato v. McGinty, No. 1:17-CV-1280 (GLS/TWD), 2019 WL 8064011, at *3 (N.D.N.Y. Aug. 7, 2019) (quoting Good Shepherd Manor Found., Inc. v. City of Momence, 323 F.3d 557, 562 (7th Cir. 2003)).  Rather, plaintiff "must [] 'demonstrate that a denial of benefits occur[ed] . . . because of [her] disability.'"  Id. (citing Henrietta D. v. Bloomberg, 331 F.3d 261, 278 (2d Cir. 2003)) (internal quotation marks and citations omitted).  "Quite simply, the demonstration that a disability makes it difficult for a plaintiff to access benefits that are available to both those with and without disabilities is sufficient to sustain a claim for a reasonable accommodation."  Henrietta, at 277.  However, as plaintiff has not sufficiently alleged a disability, the undersigned need not determine whether plaintiff sufficiently alleged that a disability caused her difficulty accessing any "benefits[]" that would amount to a denial of a "reasonable accommodation."  Id. at 282 (citation omitted) ("A 'reasonable accommodation' is one that gives the otherwise qualified plaintiff with disabilities 'meaningful access' to the program or services sought.").

### b.  Retaliation

To plead a claim for retaliation under the ADA, there must be facts alleging that: "(i) a plaintiff was engaged in protected activity; (ii) the alleged retaliator knew that [the]

plaintiff was involved in protected activity; (iii) an adverse decision or course of action was taken against [the] plaintiff; and (iv) a causal connection exists between the protected activity and the adverse action." Weixel v. Bd. of Educ. of City of N.Y., 287 F.3d 138, 148 (2d Cir. 2002) (citations omitted). "Requesting reasonable accommodations for a disability may also constitute protected activity." Konieczny v. N.Y. State Div. of Parole, 647 F. Supp. 2d 256, 264 (W.D.N.Y. 2009) (citation omitted). "Generally, any activity designed to resist or antagonize . . .; to contend against; to confront; resist; [or] withstand discrimination prohibited by Title VII constitutes a protected oppositional activity." Straw v. Wolters Kluwer United States, Inc., No. 20-CV-3251 (LLS), 2020 WL 2115177, at *4 (S.D.N.Y. May 1, 2020), appeal dismissed (July 2, 2020) (quotation marks omitted) (quoting Littlejohn v. City of N.Y., 795 F.3d 297, 317 (2d Cir. 2015)). "[A] plaintiff pursuing a retaliation claim need not prove that he or she was actually 'disabled' within the meaning of the ADA." Frantti v. N.Y., 414 F. Supp. 3d 257, 290 (N.D.N.Y. 2019) (citation omitted).

Plaintiff's initial reference to a retaliation claim is in her recitation of various statutes, in which she includes the ADA's retaliation provision, 42 U.S.C. § 12203. See Am. Compl. at 1. Plaintiff then states that defendant's "willfully brazen behavior can no longer threaten my family and/or retaliate against potential witnesses, and profit off of someone else's loss." Id. at 2. Plaintiff explains that defendant "harassed, intimidated, and threatened [plaintiff's sister] with incarceration if she interfered with watching [plaintiff's] children." Id. at 17. Although is it possible for a retaliation claim to be based on action taken towards a thirty-party, plaintiff does not allege that defendant acted in such a way towards plaintiff's sister because of an exercise of protected activity. But

see Thompson v. N. Am. Stainless, LP, 562 U.S. 170, 174-75 (2011) (explaining that in the context of a Title VII claim, retaliation against a third party may constitute an adverse action if it would have dissuaded the plaintiff from engaging in his or her protected activity); Lovejoy-Wilson v. NOCO Motor Fuel, Inc., 263 F.3d 208, 223 (2d Cir. 2001) ("We analyze a retaliation claim under the ADA using the same framework employed in Title VII cases."). It is also not clear whether plaintiff contends that defendant took actions against her sister because of her request to adjourn the proceedings, because plaintiff was in the hospital, or for some other non-disability related reason. See Am. Compl. at 17.

Plaintiff does not otherwise allege facts concerning retaliation against her for engaging in protected activity. See generally Am. Compl. Plaintiff does not assert, for example, that any adverse action was taken against her because she "made a reasonable request to adjourn the court date[.]" Id. at 16. Rather, plaintiff states that defendant denied her request "with blatant disrespect for the well being of [p]laintiff" and he subsequently granted her children's father custody, "without explanation[.]" Id. at 17; but see Vega v. Hempstead Union Free Sch. Dist., 801 F.3d 72, 85 (2d Cir. 2015)) ("A retaliatory purpose can be shown indirectly by timing: protected activity followed closely in time by adverse [] action."). Plaintiff also states that defendant's conduct was the result of "cultural and class bias" and was an "outrageous unauthorized social experiment[]" which does not implicate retaliation against protected activity under the ADA. Am. Compl. at 3.

Although plaintiff's pro se complaint is to be read liberally and to raise the strongest arguments it suggests, it is not the function of initial review to read any claims

into the complaint.  See Triestman, 470 F.3d at 477 (citations and quotation marks

omitted) ("There are many cases in which we have said that a *pro se* litigant is entitled

to 'special solicitude,' that a *pro se* litigant's submissions must be construed 'liberally,'

and that such submissions must be read to raise the strongest arguments that they

'suggest[.]'  At the same time, our cases have also indicated that we cannot read into

*pro se* submissions claims that are not 'consistent' with the *pro se* litigant's allegations,

or arguments that the submissions themselves do not 'suggest[.]'").

As plaintiff has not elaborated on any purported retaliation claim beyond listing

the statute as one of many under which she seeks to bring this action, and using the

word "retaliation," the undersigned recommends dismissing it without prejudice.  See

Amato v. McGinty, No. 1:21-CV-00860 (GLS/TWD), 2022 WL 226798, at *9 (N.D.N.Y.

Jan. 26, 2022) (citing Barr v. Abrams, 810 F.2d 358, 362 (2d Cir. 1986) (the Second

Circuit has repeatedly held, "complaints relying on the civil rights statutes are insufficient

unless they contain some specific allegations of fact indicating a deprivation of rights,

instead of a litany of general conclusions that shock but have no meaning")) (explaining

that "[t]he use of 'buzz words' such as 'disability,' 'accommodation,' and 'retaliation'

does not cure a pleading defect . . . .  She does not allege any facts suggesting a

plausible connection between her alleged PTSD and '[Legal Abuse Syndrome]' and the

actions that were taken against her in the state court proceedings.").

### 4.  "Tortious Interference with Parental Rights Under the Common Law"

Plaintiff purports to assert a claim of "tortious interference with parental rights

under the common law[.]"  Am. Compl. at 1.  The Eastern District of New York has

explained that "[w]ith respect to 'parental' rights, [the] plaintiffs have not cited, nor has

this Court identified, any cause of action related to such rights.  Most cases involve the more specific right of custody . . . ." <u>Decter v. Second Nature Therapeutic Program, LLC</u>, 42 F. Supp. 3d 450, 457 (E.D.N.Y. 2014).  "[T]he existence and contours of a tort cause of action for interference with parental custody under New York law are far from clear." <u>Pittman by Pittman v. Grayson</u>, 149 F.3d 111, 120 (2d Cir. 1998).  However, "[t]he 'unlawful taking or withholding of a minor child from the custody of the parent entitled to such custody is a tort.'" <u>Whalen v. Cnty. of Fulton</u>, 941 F. Supp. 290, 299 (N.D.N.Y. 1996) (quoting <u>Kajtazi v. Kajtazi</u>, 488 F. Supp. 15, 18 (E.D.N.Y.1978)), <u>aff'd</u>, 126 F.3d 400 (2d Cir. 1997).  "The plaintiff must have a legal right to custody in order to possess a cause of action for custodial interference." <u>Id.</u> (citation omitted).

"[T]he State of New York has not waived its Eleventh Amendment immunity to suit in federal court for state common law [torts]." <u>Hayut v. State Univ. of N.Y.</u>, 127 F. Supp. 2d 333, 340 (N.D.N.Y. 2000); <u>cf.</u> <u>Lambert v. N.Y. State Office of Mental Health</u>, No. 97-CV-1347 (JG), 2000 WL 574193, at *7 (E.D.N.Y. Apr. 24, 2000) ("Likewise, the Eleventh Amendment bars [the plaintiff]'s common law tort claim for intentional infliction of emotional distress."), <u>aff'd</u>, 22 F. App'x 71 (2d Cir. 2001) (summary order).  Judicial immunity has also been applied to common law torts.  <u>See</u>, <u>e.g.</u>, <u>Holbert v. Cohen-Gallet</u>, No. 05-CV-1281 (NGG), 2006 WL 47452, at *6 (E.D.N.Y. Jan. 9, 2006) ("Because the doctrine of judicial immunity rests on the need for uninhibited judicial decision-making, immunity extends to the exercise of judicial power by any judicial officer. . . .  Presiding over the [the p]laintiff's custody modification proceeding was without question a judicial act and [the defendant], as a Family Court Referee, had jurisdiction to do so.  Thus, [the defendant's] actions in the courtroom . . . cannot be

grounds for tort liability against her.").  As such, defendant is immune in both his

individual and "judicial" capacities.

Further, "a district court 'cannot exercise supplemental jurisdiction unless there is

first a proper basis for original federal jurisdiction.'"  Cohen v. Postal Holdings, LLC, 873

F.3d 394, 399 (2d Cir. 2017) (quoting Nowak v. Ironworkers Local 6 Pension Fund, 81

F.3d 1182, 1187 (2d Cir. 1996)).  As the undersigned recommends denying plaintiff's

federal claims, the undersigned also recommends declining to exercise supplemental

jurisdiction over any purported state law claim.  See id. (citing Kolari v. N.Y.

Presbyterian Hosp., 455 F.3d 118, 120 (2d Cir. 2006) (district court has discretion to

decline to exercise supplemental jurisdiction over state law claims because all claims

over which the federal court has jurisdiction have been dismissed)).[16]

### D. Amendment of the Complaint

"Generally, when the court dismisses a pro se complaint *sua sponte*, the court

should afford the plaintiff the opportunity to amend at least once, however, leave to re-

plead may be denied where any amendment would be futile."  Griffin v. Doe, 71 F.

Supp. 3d 306, 319-20 (N.D.N.Y. 2014) (citing Ruffolo v. Oppenheimer & Co., 987 F.2d

129, 131 (2d Cir. 1993)).  "[A]n opportunity to amend is not required where the plaintiff

---

[16] Plaintiff also includes a header titled "Defendant's Fraudulent Scheme to Hide and/or Tamper with
Witness and/or Alter Court Records."  Am. Compl. at 21.  Plaintiff submitted a one-page letter from a court
clerk at the Town of Rochester Justice Center which states, "We have no records pertaining to Docket
No. 18070010."  Id. at 22.  Plaintiff also states that she has been unable to obtain transcripts from the
relevant custody proceedings.  See id. at 17.  Plaintiff has not otherwise plead any facts that suggest that
defendant has taken any actions to tamper with evidence, or hide or alter any records; thus, there are no
facts on which the undersigned could find a plausible claim for relief.  See London v. Cnty. of Ulster, No.
1:14-CV-01095 (MAD), 2015 WL 1579147, at *9 (N.D.N.Y. Apr. 9, 2015) ("While [the p]laintiff has scripted
pages upon pages of accusations against these two [d]efendants, including claims of bias, coercion, and
witness/evidence tampering, these accusations are a cavalcade of conclusions and not facts upon which
this Court may find that a plausible claim has been pled here.  Thus, we recommend dismissing these
[d]efendants from this action pursuant to 28 U.S.C. § 1915(e)(2)(B)(iii).").

has already amended the complaint." Tafari v. McCarthy, 714 F. Supp. 2d 317, 339 (N.D.N.Y. 2010) (citation omitted).  In light of plaintiff's pro se status, it is recommended that she be afforded another opportunity to amend her complaint for the claims that defendant is not immune and where there is a cognizable cause of action.  See Amato, 2022 WL 226798, at *12 ("[I]n light of [the p]laintiff's *pro se* status and in an abundance of caution, as was the case in the related action, better pleading—addressing the deficiencies outlined above—could potentially save [the p]laintiff's ADA claim for prospective injunctive relief against Judge McGinty from being *sua sponte* dismissed on initial review.").

### III.  Appointment of Counsel

In Judge Suddaby's June 13, 2022, Decision and Order, he addressed plaintiff's two motions to appoint counsel.  See Dkt. Nos. 4, 7; Dkt. No. 8 at 2-3.  Judge Suddaby denied plaintiff's request for counsel without prejudice because plaintiff had not substantiated her efforts to procure counsel, it was too soon to determine whether plaintiff's claims were of substance, and the other relevant factors weighed against granting the request.  See Dkt. No. 8 at 2-3.

In her amended complaint, plaintiff states that "[a]lthough this Court noted that this Pro Se litigant is able to effectively litigate this action thus far, . . . my disabilities put me in an inferior position and not on equal ground as a highly trained and skilled professional attorney"; therefore, she "specifically request[s] appointed counsel to ensure a just and proper opportunity to further present my claim . . . ."  Am. Compl. at 2.

"[T]he indigent [person must demonstrate that they are] unable to obtain counsel before appointment will even be considered." Hodge v. Police Officers, 802 F.2d 58, 61 (2d Cir. 1986). Plaintiff has not asserted any information indicative of an attempt to secure counsel. See generally Am. Compl. Additionally, "in deciding whether to appoint counsel . . . the [court] should first determine whether the indigent's position seems likely to be of substance." Hodge, 802 F.3d at 61. If the claim is likely to be of substance, the Court must consider certain factors, including

> [t]he indigent's ability to investigate the crucial facts, whether conflicting evidence implicating the need for cross-examination will be the major proof presented to the fact finder, the indigent's ability to present the case, the complexity of the legal issues, and any special reason . . . why appointment of counsel would be more likely to lead to a just determination.

Id. "[A]ppointments of counsel are not to be granted 'indiscriminately.'" Edwards v. Troy Police Dept., No. 1:19-CV-543 (LEK/CFH), 2019 WL 13217234, at *1 (N.D.N.Y. Oct. 23, 2019) (quoting Cooper v. A. Sargente & Co., Inc., 877 F.2d 170, 172 (2d Cir. 1989)). "Although 28 U.S.C. § 1915(e)(1) authorizes the court 'to request an attorney to represent any person unable to afford counsel,' a civil litigant has no constitutional right to the assistance of counsel." Id. (quoting Berrios v. N.Y.C. Housing Auth., 564 F.3d 130, 135 (2d Cir. 2009)).

As Judge Suddaby stated in his Decision and Order, "because [d]efendant has not yet appeared and answered, the Court is unable to determine, as a threshold matter, whether [p]laintiff's claims are likely to be of substance." Dkt. No. 8 at 2-3 (citing Terminate Control Corp. v. Horowitz, 28 F.3d 1335, 1341 (2d Cir. 1994)). Next, "although plaintiff contends that h[er] mental illness/diagnoses make it difficult for h[er] to litigate this action, it appears that plaintiff has been able to represent h[erself] thus far

by communicating with the Court and filing a detailed complaint in this action."

Edwards, 2019 WL 13217234, at *2.  Plaintiff was able to then review the undersigned's

Report-Recommendation and Order, and Judge Suddaby's Decision and Order and

produce an amended complaint attempting to address the faults identified in her original

complaint.  See Am. Compl.  As such, it does not appear that, as to date, plaintiff has

been unable to effectively litigate this action.  Finally, "[a]ppointment of counsel in civil

cases is a privilege which is justified only by exceptional circumstances, not a right

accorded to any plaintiff who would be better equipped or would feel more comfortable

with legal representation."  Edwards, 2019 WL 13217234, at *2.  "Lack of knowledge of

the law does not suffice to demonstrate that appointment of counsel would increase the

likelihood of a just determination in this case."  Id.  Accordingly, plaintiff's request for the

appointment of counsel is denied without prejudice.


### IV. Conclusion

**WHEREFORE**, for the reasons set forth herein, it is hereby

**RECOMMENDED**, that any purported claims under 18 U.S.C. §§ 241 and 242,

42 U.S.C. § 12301(3)(5)(7)(A)(B), 42 U.S.C. § 12182, and "tortious interference with

parental rights under the common law" (Dkt. No. 9) be **DISMISSED WITH PREJUDICE**

**WITHOUT LEAVE TO AMEND**; and it is further

**RECOMMENDED**, that plaintiff's purported (1) 42 U.S.C. § 1985 claim against

defendant in his individual and official capacities seeking injunctive and declaratory

relief; and (2) ADA claims against defendant in his official capacity seeking injunctive

relief (Dkt. No. 9) be **DISMISSED WITHOUT PREJUDICE WITH LEAVE TO AMEND**;[17] and it is further

      **RECOMMENDED**, that should the District Judge adopt this Report-Recommendation and Order, plaintiff be given thirty (30) days from the date of the Order adopting this Report-Recommendation and Order to file a second amended complaint, and if plaintiff does not file a second amended complaint it will be deemed as an abandonment of any claims for which leave to replead has been granted and will result in judgment being entered against plaintiff on these claims without further order by the Court; and it is further

      **ORDERED**, that plaintiff's request for the appointment of counsel is **DENIED without prejudice**.

      **IT IS SO ORDERED**.

      Pursuant to 28 U.S.C. § 636(b)(1), plaintiff has **FOURTEEN (14)** days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**. Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993) (citing Small v. Sec'y of Health and Human Servs., 892 F.2d 15 (2d Cir. 1989)); see also 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a).[18]

---

[17] Should the District Judge adopt this Report-Recommendation & Order, permitting plaintiff file a second amended complaint, plaintiff is advised that any second amended complaint will supersede and replace the amended complaint in its entirety. Plaintiff is not permitted to incorporate by reference any portion of earlier complaints and may not attempt to replead claims that have already been dismissed by this Court with prejudice.

[18] If you are proceeding pro se and are served with this Report-Recommendation & Order by mail, three (3) additional days will be added to the fourteen (14) day period, meaning that you have seventeen (17) days from the date the Report-Recommendation & Order was mailed to you to serve and file objections. FED. R. CIV. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Id. § 6(a)(1)(c).

Dated: October 5, 2022
      Albany, New York

Christian F. Hummel
U.S. Magistrate Judge